UNITED STATES of America, Plaintiff,

v.

CORDOVA CHEMICAL COMPANY OF MICHIGAN, et al., Defendants.

CPC INTERNATIONAL, INC., Counterclaim–Plaintiff,

v.

UNITED STATES of America, Counterclaim–Defendant.

No. G89–961 ca.

United States District Court, W.D. Michigan, S.D.

Oct. 31, 1990.

Thomas J. Gezon, Asst. U.S. Atty., John A. Smietanka, U.S. Atty., Grand Rapids, Mich., Jon M. Lipshultz, Asst. Atty. Gen., U.S. Dept. of Justice, Environment & Natural Resources Div., Environmental Defense Section, Michael J. McNulty, Richard B. Stewart, U.S. Dept. of Justice, Environment & Natural Resources Div., Environmental Enforcement Section, Washington, D.C., Larry L. Johnson, Anne L. Alonzo, U.S.E.P.A., Region V, Chicago, Ill., John Fogarty, U.S.E.P.A., Enforcement & Compliance Monitoring Office, Washington, D.C., for the U.S.

John D. Tully, John V. Byl, Warner, Norcross & Judd, J. Michael Smith, Gordon J. Quist, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., Randy M. Mott, Raissa Kirk, Robert T. Lee, Stephen E. Williams, Mott, Williams & Lee, P.C., Washington, D.C., David L. Harris, Robert Chesler, Alexander Kovacs, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, N.J., Charles M. Denton, Theresa M. Pouley, Jon F. DeWitt, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, Mich., for defendants.

Carole D. Bos, Kevin J. O'Dowd, Buchanan & Bos, Grand Rapids, Mich., Richard A. Fogel, William M. Savino, M. Paul Gorfinkel, Rivkin, Radler, Bayh, Hart & Kremer, Uniondale, N.Y., for Commercial Union Ins. Co. and Fireman's Fund Ins. Co.

Stanley A. Prokop, Plunkett & Cooney, P.C., Detroit, Mich., for Home Ins. Co.

Timothy F. Casey, Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, Mich., for Insurance Co. of the State of Pa.

Peter B. Kupelian, Kirsten Kingdon, Tucker & Rolf, Southfield, Mich., Robert J. Bates, Jr., Phelan, Pope & John, Ltd., Chicago, Ill., for Zurich Ins. Co.

Lynn L. Lower, Kallas, Lower, Henk & Treado, Bloomfield Hills, Mich., for Affiliated FM Ins. Co.

Grant J. Gruel, Scott R. Melton, Gruel, Mills, Nims & Pylman, Grand Rapids, Mich., Irene A. Sullivan, Timothy G. Reynolds, Skadden, Arps, Slate, Meagher & Flom, New York City, for North Star Reinsurance Corp.

Reynolds A. Brander, Jr., Cholette, Perkins & Buchanan, Grand Rapids, Mich., for International Ins. Co.

Randall E. Phillips and Marilyn A. Madorsky, Provizer, Lichtenstein, Pearlman & Phillips, P.C., Southfield, Mich., Sheldon Karasik, Peter M. Papasavas, Sheft & Sweeney, New York City, for Highlands Ins. Co.

Harrison C. Stackpole, Holahan, Malloy, Maybaugh & Monnich, Troy, Mich., for Mission Ins. Co.

Charles W. Browning, Vandeveer & Garzia, P.C., Detroit, Mich., for Aetna Cas. & Sur. Co.

Gary A. Maximiuk, Wheeler, Upham, Bryant & Uhl, Grand Rapids, Mich., for Newington, Ltd.

James R. Nelson, Nelson & Kreuger, P.C., Grand Rapids, Mich., for Fireman's Fund Ins. Co.

William F. Jerome, State of N.Y. Ins. Dept., New York City, for Midland Ins. Co.

Joel S. Huyser and Robert J. Dugan, Rhoades, McKee, Boer, Goodrich & Tita, Grand Rapids, Mich., Eileen B. Eglin, Stephen D. Straus, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for Northwestern Nat. Ins. Co.

Charles N. Dewey, Jr., Dilley, Dewey & Damon, P.C., Grand Rapids, Mich., Paul R. Koepff, Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, for Ins. Co. of North America.

Kathleen L. Cavanaugh and Eric J. Eggan, Asst. Attys. Gen., Frank J. Kelley, Atty. Gen., Environmental Protection, Lansing, Mich., for Michigan Dept. of Natural Resources.

## OPINION

HILLMAN, Chief Judge.

This is a hazardous waste cleanup case brought under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.* The matter is before the court on a motion filed by the United States ("the government") to dismiss a counterclaim brought by Defendant CPC International, Inc. ("CPC"), and CPC's motion to remand the administrative record for supplementation. Because the court lacks subject matter jurisdiction to hear CPC's counterclaim, the government's motion to dismiss is granted and CPC's motion to remand is denied.

## BACKGROUND

Since 1980, the Environmental Protection Agency (EPA) has engaged in an effort to control seepage of hazardous contaminants into Little Bear Creek from a site at 500 Agard Road in Dalton Township, north of Muskegon, Michigan. For nearly 25 years, the site had been used for the manufacture of a variety of synthetic drugs, veterinary medicines and agricultural chemicals by a succession of owners. The site is on the National Priorities List, a federal list of hazardous waste sites posing the greatest threat to health, welfare and the environment. 40 C.F.R. Part 300, app. B.

EPA derives its authority for this effort from CERCLA, which, as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), provides the federal statutory mechanism for cleaning up hazardous substances. Faced with several regulatory options for eliminating the environmental and health dangers identified at the site, EPA decided in 1986 to proceed under section 104 of CERCLA, 42 U.S.C. § 9604. Under this section, EPA determines the appropriate method of cleanup and later seeks to recover costs from liable parties under section 107, 42 U.S.C. § 9607. As a result, the agency conducted a "remedial investigation" and then a "focused feasibility study," which outlined the remedial alternatives under consideration. Finally, EPA issued a "record of decision," which sets forth the remedy that the agency plans to implement at the site.

Throughout this decision-making process, EPA compiled an administrative record, as required by section 113(k) of CERCLA, 42 U.S.C. § 9613(k). In addition to serving as the evidentiary foundation for the agency's decision of an appropriate remedy, the record provides for the participation of interested parties in the process under section 113(k)(2), 42 U.S.C. § 9613(k)(2).

On October 16, 1989, pursuant to section 107 of the Act, the United States filed this action seeking past and future costs of the ongoing cleanup from a number of past or current owners of the site, including CPC. These costs include those incurred in the effort to determine the appropriate course

of remedial action and those that will be incurred when the remedial action is implemented in the future.

On February 2, 1990, CPC filed the counterclaim that is now subject to the government's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6). Both CPC's counterclaim and its motion to remand seek an order from the court remanding the administrative record for supplementation.

CPC's counterclaim alleges that the government has breached its mandatory duties in compiling the administrative record as required by section 113(k).[1] Specifically, CPC enumerates a host of alleged deficiencies in the administrative record: relevant studies and documents were never included; materials listed in the record are absent; documents were not timely filed, preventing adequate review during public comment periods; other materials have never been made public. These actions,

CPC alleges, violate EPA's non-discretionary duties to assemble an administrative record "that shall include all items developed and received...." Section 113(k)(2)(B), 42 U.S.C. § 9613(k)(2)(B).

CPC's counterclaim seeks injunctive relief directing EPA to supplement the administrative record and to rescind the record of decision setting forth EPA's remedy until there has been adequate time for public review and comment. Similarly, CPC, in its motion to remand, requests an order remanding the administrative record to EPA for "further development and supplementation consistent with requirements of section 113(k)" of CERCLA.

CPC brings its counterclaim pursuant to section 310(a), 42 U.S.C. § 9659, which permits CERCLA suits brought by private citizens in limited circumstances.[2] CPC contends that EPA's alleged breach of its duty

---

1. Section 113(k), 42 U.S.C. § 9613(k) provides in pertinent parts:

§ 9613. Civil Proceedings.
(k) Administrative record and participation procedures
  (1) Administrative record
  The President shall establish an administrative record upon which the President shall base the selection of a response action. The administrative record shall be available to the public at or near the facility at issue. The President also may place duplicates of the administrative record at any other location.
  (2) Participation procedures

. .      .     .     .

  (B) Remedial action
  The President shall provide for the participation of interested persons, including potentially responsible parties, in the development of the administrative record on which the President will base the selection of remedial actions and on which judicial review of remedial actions will be based. The procedures developed under this subparagraph shall include, at a minimum, each of the following:
    (i) Notice to potentially affected persons and the public, which shall be accompanied by a brief analysis of the plan and alternative plans that were considered.
    (ii) A reasonable opportunity to comment and provide information regarding the plan.
    (iii) An opportunity for a public meeting in the affected area, in accordance with section 9617(a)(2) of this title (relating to public participation).

    (iv) A response to each of the significant comments, criticisms, and new data submitted in written or oral presentations.
    (v) A statement of the basis and purpose of the selected action.
  For purposes of this subparagraph, the administrative record shall include all items developed and received under this subparagraph and all items described in the second sentence of section 9617(d) of this title. The President shall promulgate regulations in accordance with chapter 5 of Title 5 of the United States Code to carry out the requirements of this subparagraph.

2. Section 310(a), 42 U.S.C. § 9659(a) provides in pertinent parts:
§ 9659. Citizens suits.
  (a) Authority to bring civil actions
  Except as provided in subsections (d) and (e) of this section and in section 9613(h) of this title (relating to timing of judicial review), any person may commence a civil action on his own behalf—
    (1) against any person (including the United States and any other governmental instrumentality or agency ...) who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter ...; or
    (2) against the President or any other officer of the United States (including the Administrator of the Environmental Protection Agency ...) where there is alleged a failure of the President or of such other officer to perform any act or duty under this chapter, ..., which is not discretionary with the President or such other officer.

to compile an administrative record is the kind of violation of a standard or failure of a non-discretionary duty for which section 310(a) permits suit.

Without conceding that the administrative record in this case violates CERCLA standards, the government argues in its motion to dismiss that the court lacks subject matter jurisdiction at this stage in the cleanup. It bases this jurisdictional argument on section 113(h) of CERCLA, which sets forth strict limits on the timing of judicial review of challenges to EPA actions.[3] Specifically, the government points to the language of section 113(h)(4), the provision that precludes citizen suits brought under section 310(a) except when they challenge removal or remedial actions "taken ... or secured" under the appropriate CERCLA provisions. Because the remedial action planned for this site has not yet begun, the government argues, CPC's counterclaim cannot stand until the remedial plan is implemented and completed.

CPC maintains that the jurisdictional bar of section 113(h) should not apply to its counterclaim, which it characterizes as a procedural, rather than substantive, challenge to an EPA remedial decision.

## DISCUSSION

A federal court has limited jurisdiction, and these limits "whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978). With respect to CERCLA cases, Congress has specifically limited federal jurisdiction of citizen suits to those filed after the completion of remedial action. Section 113(h)(4), 42 U.S.C. § 9613(h)(4). As a result, the court cannot reach the merits of CPC's claims regarding the administrative record and must dismiss the counterclaim pursuant to Fed.R.Civ.P. 12(b)(1).

The Sixth Circuit has recognized that CERCLA's "primary purpose is 'the prompt cleanup of hazardous waste sites'...." *J.V. Peters & Co., Inc. v. Administrator*, 767 F.2d 263, 264 (6th Cir. 1985) (opinion by Circuit Judge Martin) (*quoting Walls v. Waste Resource Corp.*, 761 F.2d 311, 318 (6th Cir.1985)). Allowing challenges to EPA actions prior to their implementation, therefore, is contrary to the central function of the Act. *Id.* Since *J.V. Peters* was decided, Congress has codified this rule with the passage of SARA, as section 113(h) places specific jurisdictional limitations on challenges to removal or remedial actions. *See Schalk v. Reilly*, 900 F.2d 1091, 1096 (7th Cir.1990); *Alabama v. EPA*, 871 F.2d 1548, 1558 (11th Cir.), *cert. denied* —— U.S. ——, 110 S.Ct. 538, 107 L.Ed.2d 535 (1989); *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1387–88 (5th Cir.1989); *Barmet Aluminum Corp. v. Thomas*, 730 F.Supp. 771, 773 (W.D.Ky.1990) (Circuit Judge Martin sitting by designation).

The plain language of section 113(h)(4) requires dismissal of a citizen suit that challenges a remedial action prior to its implementation. *Schalk*, 900 F.2d at 1095;

---

**3.** Section 113(h), 42 U.S.C. § 9613(h) provides in pertinent parts:

§ 9613. **Civil Proceedings.**

**(h) Timing of review**
No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, ..., in any action except one of the following:
(1) An action under section 9607 of this title to recover response costs or damages or for contribution.

(2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.
(3) An action for reimbursement under section 9606(b)(2) of this title.
(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to the removal where a remedial action is to be undertaken at the site.
(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.

*Alabama,* 871 F.2d at 1557; *Voluntary Purchasing Groups,* 889 F.2d at 1387–88. "The obvious meaning of this statute is that when a remedy has been selected, no challenge to the cleanup may occur prior to completion of the remedy." *Schalk,* 900 F.2d at 1095. The provision grants federal court jurisdiction only over citizen suits that challenge remedial action after it has been "taken" or "secured." In addition, the subsection's final sentence states that "[s]uch an action may not be brought with regard to the removal where a remedial action is to be undertaken at the site." 42 U.S.C. § 9613(h)(4).

In this case, the remedial action has been selected, but not implemented. As a result, section 113(h)(4) precludes CPC's counterclaim.

> Congress's use of the past tense ("removal or remedial action taken"; "was in violation of") combined with its final sentence ("Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.") point to one conclusion: Congress intended judicial review of EPA remedial action only after some action is undertaken. It is clear from the plain meaning of the subsection that a remedial plan must go forward before review is available.

*Neighborhood Toxic Cleanup Emergency v. Reilly,* 716 F.Supp. 828, 833 (D.N.J. 1989).

The language of a statute ordinarily is conclusive "[a]bsent a clearly expressed legislative intention to the contrary." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In fact, the legislative history of section 113(h) clearly shows an intent to bar citizen suits until the completion of remedial action. *See, e.g.,* H.Conf.Rep. No. 962, 99th Cong., 2d Sess. 224, *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 3317; H.R.Rep. No. 253(I), 99th Cong., 2d Sess. 81, *reprinted in* 1986 U.S.Code Cong. & Admin.News 2863; H.R.Rep. No. 253(III), 99th Cong., 2d Sess. 22, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3045.

CPC attempts to avoid this statutory bar by characterizing its counterclaim as a procedural suit that does not challenge the remedy selected by EPA, but rather seeks EPA compliance with its non-discretionary duties. The court does not find this distinction between a challenge to the remedy selection process and the remedy itself persuasive.

CPC concedes that remanding the administrative record could effect the remedial action EPA has selected. The counterclaim specifically seeks an injunction that would rescind the EPA's "record of decision", which sets forth the remedial action selected. CPC's First Amended Answer, Defenses, and Counterclaim at p. 24. In its brief, CPC states that remand would facilitate "possible agreement between the Government and defendants on the remedy." Memorandum of CPC in Opposition to United States' Motion to Dismiss and in Support of CPC's Motion to Remand at p. 19. During oral argument, CPC's counsel acknowledged that remanding the administrative record at this juncture could have an effect on the remedy.

Underlying these allegations about inadequacies in the administrative record, then, is a challenge to the remedy that EPA selected based on this record. As such, CPC's counterclaim contravenes the congressional mandate in section 113(h)(4) that challenges to remedial actions not occur until after remedial action is taken. *See Schalk,* 900 F.2d at 1094–95 (affirming dismissal of citizen suits alleging procedural errors); *Neighborhood Toxic Cleanup Emergency,* 716 F.Supp. at 837 (dismissing citizen suit alleging due process violations). "[C]hallenges to the procedure employed in selecting a remedy nevertheless impact the implementation of the remedy and result in the same delays Congress sought to avoid by passage of the statute." *Schalk,* 900 F.2d at 1097.

This same jurisdictional bar controlling the timing of judicial review makes the cases cited by CPC inapplicable. In *United States v. Rohm & Haas Co., Inc.,* 669 F.Supp. 672 (D.N.J.1987) and *United States v. Charles George Trucking Co., Inc.,* 1990

838

WL 171009, 1990 U.S.Dist. LEXIS 10627 (D.Mass.1990), courts ordered the remand of administrative records after remedial action had been undertaken. Similarly, CPC's contention that section 113(h)(4) should not apply because EPA has brought a section 107 cost-recovery action is without authority. This argument fails to overcome the clear statutory language and congressional intent that gives implementation of remedial action priority over challenges to it.

The court's lack of jurisdiction at this time does not necessarily foreclose CPC from challenging the administrative record at a later date. Section 113(j)(4), 42 U.S.C. § 9613(j)(4), specifically provides that a court may "disallow costs or damages" for procedural errors "so serious and related to matters of such central relevance to the action that the action would have been significantly changed had such errors not been made."

The allegations that CPC attempts to raise are nevertheless troubling. Cast in the worst light, the CERCLA provisions seem to create the possibility for a biased administrative record that accused parties have no recourse to contest until after an unnecessarily expensive cleanup. I must assume, however, that Congress carefully weighed the merits of limiting federal jurisdiction over claims that might delay efforts to eliminate hazardous substances that endanger the environment and the public.

CONCLUSION

For the reasons set forth in this opinion, the court lacks subject matter jurisdiction to hear CPC's counterclaim. Accordingly, the court grants the government's motion to dismiss the counterclaim pursuant to Fed.R.Civ.P. 12(b)(1) and denies CPC's motion to remand the administrative record.