NYGAARD, Circuit Judge,
concurring:
I agree with the majority that the district court had and that we have jurisdiction under 42 U.S.C. § 9613(h)(1). I reach this conclusion because I think it would be anomalous to say, for example, that because the remedy it chose was arbitrary and capricious, the EPA could not recover in a cost recovery action for wells already drilled, but the propriety of its decision regarding all the future wells in the same response phase would not yet be ripe for review. It seems to me that when the EPA opens the door by bringing a cost recovery suit while a response action remains in progress, common sense and judicial economy require us to review both the completed work and those similar portions of the response phase that are either planned or partially completed.[1]
I part company with the majority, however, on the issue of whether the citizens’ suit provision codified at § 9613(h)(4) provides an additional and independent basis for federal jurisdiction. The majority suggests that whenever irreparable harm to the environment is alleged, jurisdiction for judicial review is established by that subsection. To the extent that § 9613(h)(1) independently provides a source of jurisdiction, the question of whether jurisdiction is also present under § 9613(h)(4) is unnecessary to the result the majority reaches and its observations regarding that subsection are dicta.
I would not reach the issue of jurisdiction under § 9613(h)(4) because I believe Gamma-Tech clearly waived it at oral argument in the following exchange:
MR. NUCCIARONE: This is not — the presentation by [Gamma-Tech] is not founded on the citizens’ suit provision, Your Honor....
THE COURT: It is not?
MR. NUCCIARONE: It is not. And that is an erroneous analysis that Judge Fisher made, Your Honor. So you are ...
THE COURT: So you were alleging jurisdiction only under the reimbursement suit?
MR. NUCCIARONE: Correct. And that is why the eases the government relies on are of little aid to this court.
*151 Moreover, it is undisputed that Gamma-Tech has not complied with the requirements of CERCLA § 9659(d)(1), which provides that a citizens’ suit may not be brought until sixty days after the plaintiff has notified the violators of the Act and both the federal and state governments. Because this notice is lacking, there is simply no jurisdiction under the citizens’ suit provision. See Boarhead Corp. v. Erickson, 923 F.2d 1011, 1019 n. 13 (3d Cir.1991). And while it might be argued that because the EPA has already filed a cost recovery action the notice provision would be superfluous, courts have strictly interpreted the requirement of notice in environmental actions.
In Hallstrom v. Tillamook County, 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989), certain property owners sued their county government, alleging that the county’s sanitary landfill violated the Resource Conservation and Recovery Act (RCRA). They failed, however, to give the notice required by the statute. The district court held that by notifying the state and federal agencies one day after the defendant moved for summary judgment, the plaintiff cured any defect in notice. The Supreme Court, however, after noting that a variety of environmental statutes contain similar provisions, disagreed:
[T]he notice and 60-day delay requirements are mandatory conditions precedent to commencing suit under the RCRA citizen suit provision; a district court may not disregard these requirements at its discretion.
Id. at 31, 110 S.Ct. at 311.
Likewise, in Greene v. Reilly, 956 F.2d 593 (6th Cir.1992), the plaintiff sued under the Clean Water Act. Although he did notify the EPA that he considered it in violation of the Act, the plaintiff did not formally threaten to sue. The Court of Appeals for the Sixth Circuit, although acknowledging that the EPA had some notice of the violation and was aware of the situation generally, nevertheless held that noncompliance with the formal notice requirement barred the suit. Id. at 594.
Accordingly, I am convinced that federal courts do not have jurisdiction to the extent this case is argued as a citizens’ suit.
Moreover, even if the citizens’ suit were not barred by waiver and procedural default, I do not believe that § 9613(h)(4) provides jurisdiction until the remedial work complained of is actually completed. Every United States Court of Appeals that has construed this section has so held. These holdings are based on a textual analysis of the statute, which refers in the past tense to removal or remedial action taken or secured, and on CERCLA’s legislative history. See Arkansas Peace Ctr. v. Arkansas Dep’t of Pollution Control & Ecology, 999 F.2d 1212, 1216-17 (8th Cir.1993) (discussing cases), cert. denied, — U.S. -, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994); North Shore Gas Co. v. Environmental Protection Agency, 930 F.2d 1239, 1244-45 (7th Cir.1991); Schalk v. Reilly, 900 F.2d 1091, 1095 (7th Cir.), cert. denied, 498 U.S. 981, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990); State of Alabama v. United States Envtl. Protection Agency, 871 F.2d 1548, 1557-58 (11th Cir.), cert. denied, 493 U.S. 991, 110 S.Ct. 538, 107 L.Ed.2d 535 (1989).[2]
Beyond the plain language of the statute, a section such as 9613(h) that withdraws federal jurisdiction from suits brought against the United States is essentially a reassertion of sovereign immunity, and it is a basic principle of law that “[wjaivers of immunity must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires.” Ruckelshaus v. Sierra *152 Club, 463 U.S. 680, 685, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983) (citations and internal quotation marks omitted); see Voluntary Purchasing Groups, Inc. v. Reilly, 889 F.2d 1380, 1385 (5th Cir.1989) (applying Sierra Club to section 9613). Thus, even if the plain language of the statute were equivocal on the timing of review, it would still not support a waiver of sovereign immunity, and we should not imply one unless the legislative history in favor of such a construction is compelling. Cf. Smith v. Fidelity Consumer Discount Co., 898 F.2d 907, 912 (3d Cir.1990).
The legislative history of CERCLA, however, hardly compels the conclusion that Congress intended the broad judicial review that the majority holds is available. Instead, as the majority purports to recognize, “Congress was anxious to safeguard EPA removal efforts from delay resulting from litigation brought by potentially responsible parties.” Majority at 141. That desire was equally present for the circumstances here.
In considering and reporting out H.R. 2817, which was later incorporated into H.R. 2005 and passed, the Committee on Energy and Commerce said of what is now § 9613(h):
The section is intended to codify the current position of the Administrator and the Department of Justice with respect to preenforcement review: there is no right of judicial review of the Administrator’s selection and implementation of response actions until after the response action [sic] have been completed to their completion.
H.R.Rep. No. 253(1), 99th Cong., 1st Sess. 81 (1985), reprinted in 1986 U.S.C.C.A.N. 2835, 2863. Indeed, a thorough review of the legislative history reveals no evidence whatsoever that Congress intended anything other than a judicial review of completed response actions under the citizens’ suit provision. See H.R.Rep. No. 253(111), 99th Cong., 1st Sess. 22-23 (1985), reprinted in 1986 U.S.C.C.A.N. 3038, 3045-46 (House Committee on the Judiciary, emphasizing that judicial review must be postponed until after the response action is taken and completed); H.R.Rep. No. 253(V), 99th Cong., 1st Sess. 25-26 (1985), reprinted in 1986 U.S.C.C.A.N. 3124, 3148-19 (House Committee on Public Works and Transportation, referring to actions taken in past tense).
In fact, the Conference Report accompanying the Superfund Amendments of 1986, which is the most persuasive evidence of congressional intent,[3] states, in pertinent part:
[A]n action ... would lie following completion of each distinct and separable phase of the cleanup. For example, a surface cleanup could be challenged as violating the standards or requirements of the Act once all the activities set forth in the Record of Decision for the surface cleanup phase have been completed.... Any challenge under this provision to a completed stage of a response action shall not interfere with those stages of the response action which have not been completed.
H.R.Conf.Rep. No. 99-962, 99th Cong., 2d Sess. 223-24 (1986), reprinted in 1986 U.S.C.C.A.N. 3276, 3316-17.
Rather than coming to grips with the conference report and the reports of the standing committees that reported out the CERC-LA amendments, the majority seeks support in conflicting statements made on the House and Senate floors by individual conferees. See majority at 146-47. Yet, it is a well-established principle of statutory interpretation that contradictory floor statements by individual members, even the sponsors of the bill, are of extremely limited authority and cannot override the committee and conference reports. See Brock v. Pierce County, 476 U.S. 253, 263, 106 S.Ct. 1834, 1840-41, 90 L.Ed.2d 248 (1986); Garcia v. United States, 469 U.S. 70, 76, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984); Chrysler Corp. v. Brown, 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979).
The majority nevertheless concludes that, absent a jurisdictional exception where irreparable harm is alleged, the citizens’ suit provision would be rendered a nullity and an absurdity. Majority at 146. Even if that is so, it is clear from the legislative history that Congress carefully considered the timing of review issue and was well aware that environmental contamination could irreparably damage both the environment and human health. Nevertheless, it chose not to provide a jurisdictional exception for irreparable *153 harm. See Hanford Downwinders Coalition, Inc. v. Dowdle, 841 F.Supp. 1050, 1062 (E.D.Wash.1993). And while Congress’ decision on that issue might not comport with the policy views of certain members of the public and the judiciary, it is simply not our function as a reviewing court to act as a super-legislature and second-guess the policy choices that Congress made.[4]
I therefore respectfully concur in the judgment.
Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ROTH, LEWIS, McKEE and WEIS,* Circuit Judges.

. I doubt, however, whether we would have jurisdiction to review future planned phases of a cleanup where funds have not yet been expended. In such a case, it seems likely that Congress only intended that those phases of the cleanup in progress or already completed would be ripe for review in federal court. See United States v. Charles George Trucking Co., 682 F.Supp. 1260, 1272 (D.Mass.1988); United States v. Mottolo, Nos. 83-547-D, 84-80-D, 1992 WL 674737 (D.N.H. Dec. 17, 1992).

. See also City of Eureka v. United States, 770 F.Supp. 500, 502 (E.D.Mo.1991); Neighborhood Toxic Cleanup Emergency v. Reilly, 716 F.Supp. 828, 830-34 (D.N.J.1989) (discussing cases); Frey v. Thomas, No. IP 88-948-C, 19 Envtl. L.Rep. 20383, 1988 WL 215414, 1988 U.S.Dist.LEXIS 16,967, (S.D.Ind. Dec. 6, 1988). One district court within our circuit, however, has expressed a contrary view. In Cabot Corp. v. United States Envtl. Protection Agency, 677 F.Supp. 823 (E.D.Pa.1988), potentially responsible parties sued the EPA over a remediation plan. The district court first held that section 9613(h)(1) barred review until EPA filed an action to recover costs, then held that section 9613(h)(4) must be read as encompassing only those citizens' suits that would not otherwise be deferred by the other portions of section 9613(h), including section 9613(h)(1). Id. at 828. In dictum, it went on to discuss genuine citizens' suits and opined that such actions may be brought even before the proposed remedy is implemented, based largely on its view of CERC-LA's legislative history. Id. at 828-29. Notably, however, the Neighborhood Toxic court, as well as the courts in Alabama and Frey, rejected Cabot and its reading of the legislative history. As I discuss infra, so do I.

. See, e.g., Resolution Trust Corp. v. Gallagher, 10 F.3d 416, 421 (7th Cir.1993); RJR Nabisco, Inc. v. United States, 955 F.2d 1457, 1462 (11th Cir. 1992); Demby v. Schweiker, 671 F.2d 507, 510 (D.C.Cir.1981) (opinion announcing judgment of court).

. Moreover, as the Dowdle court pointed out, id.., irreparable harm, whether explicitly asserted or not, was present on the facts of Arkansas Peace Center, Schalk and Alabama, cited by the majority as having only “superficial pertinency." Majority at 144-45. Yet, each of these courts held that judicial review was not available under section 9613(h)(4). Thus, for the majority’s view of section 9613(h)(4) to be correct, these decisions by three other courts of appeals would have to be repudiated outright.

 Weis, Circuit Judge, voted as to panel rehearing only.