**Robert L. WATERHOUSE, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 94-0676 (PLF).**

United States District Court, District of Columbia.

Dec. 22, 1994.

Tamara Y. Davis, Clinton, MD, for plaintiff.

Barbara J. Valliere, Washington, DC, for defendants.

### MEMORANDUM OPINION AND ORDER

FRIEDMAN, District Judge.

This case comes before the Court on defendants' motion to dismiss or in the alternative for summary judgment. For the reasons set forth below, defendants' motion for summary judgment is granted.

### I. FACTUAL BACKGROUND

Robert Waterhouse was the Commissary Officer at Fort Belvoir, Virginia, for the Troop Support Agency. A.R.Tab A, Encl. 1. In this capacity, he was a government contractor pursuant to 48 C.F.R. § 9.403. Yassa Yoseph Yassa, owner of Bright Electric Contractors, held a contract for service and maintenance of the commissary from 1987 to 1989 and performed various commissary construction projects. During this period, Waterhouse approved purchase orders issued to Bright and approved work that Bright performed at the commissary. A.R.Tab A, Encl. 1.

In 1988, Waterhouse accepted goods and services—including a stove, electrical repairs and air conditioning repairs—valued at $1,000 to $1,150 from Yassa and subcontractors of Yassa. A.R.Tab A, Encl. 1, 2. Waterhouse received the goods and services at his personal residence and admitted that he did not pay cash for them. A.R.Tab D, at 11. Waterhouse donated a 1982 Oldsmobile to Yassa's church, which he claims was in ex-

change for the goods and services. The church provided Waterhouse with a receipt for $3,684, which Waterhouse used in support of a tax deduction he took for a charitable donation. A.R.Tab A, Encl. 2; A.R.Tab D, at 33. Plaintiff maintains that he took the deduction only for the value of the car that exceeded the payment for services performed and goods received. A.R.Tab D, at 35. The car was in "junkyard" condition, was beyond repair and had to be hauled away and dumped. A.R.Tab A, Encl. 1, 2.

On September 8, 1993, Waterhouse was served with a notice of his proposed debarment. A.R.Tab A. On October 21 and 22, 1993, plaintiff submitted written materials in opposition to his debarment, including his own affidavit. A.R.Tab B, C. On November 1, 1993, plaintiff, with the aid of counsel, presented testimony and argument before Brigadier General Thomas C. Cuthbert, the Army's debarring official, at a debarment hearing. A.R.Tab D. On December 6, 1993, plaintiff submitted a written memorandum in opposition to his debarment. A.R.Tab E.

On January 27, 1994, General Cuthbert, the debarring official, debarred Robert Waterhouse from future contracting with the United States Army for a three-year period, effective August 31, 1993, until August 31, 1996. General Cuthbert found that the record established by a preponderance of the evidence that Mr. Waterhouse accepted illegal gratuities from Yassa and this served as the basis for the Army's decision to debar him. Decision Memorandum of Brigadier General Thomas R. Cuthbert, In the Matter of the Proposed Debarment of Robert L. Waterhouse (Jan. 27, 1994) (hereinafter "Decision"), A.R.Tab C, at 5. He found that the misconduct indicated "a lack of business integrity or honesty and is of so serious or compelling a nature that it directly affects his present responsibility to be a Government contractor or subcontractor." Decision, A.R.Tab C, at 5. He also found that Waterhouse failed to raise a material issue of fact that would require a trial-type, adversarial hearing because the preponderance of the evidence established that Waterhouse did not donate the car to Yassa.

Plaintiff alleges that (1) he was not afforded a proper hearing and opportunity to rebut witnesses in violation of his due process rights, (2) the decision to debar him was arbitrary and capricious because the debarring official improperly determined that there were no disputed issues of material facts that required an additional hearing, and (3) the debarring official, in violation of plaintiff's substantive due process rights, failed to take into account mitigating evidence or to determine whether debarment was warranted and not "punitive" in this case.

## II. LEGAL STANDARDS

■ Under the Administrative Procedure Act, a court reviewing an agency decision can set aside agency actions, findings and conclusions that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *Robinson v. Cheney*, 876 F.2d 152, 155 (D.C.Cir.1989); *Old Dominion Dairy Products, Inc. v. Secretary of Defense*, 631 F.2d 953, 960 (D.C.Cir.1980). The arbitrary and capricious standard is highly deferential and assumes the agency action to be valid; the scope of judicial review is narrow. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. at 416, 419, 91 S.Ct. at 823, 825.

Summary judgment is to be granted if there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). Once the moving party carries its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must show "specific facts showing that there is a genuine issue for trial" to survive the motion. Fed.R.Civ.P. 56(e). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brees v. Hampton*, 877 F.2d 111, 117 (D.C.Cir.1989), *cert. den. sub nom.*, *Estate of Brees v. Hampton*, 493 U.S. 1057, 110 S.Ct. 867, 107 L.Ed.2d 951 (1990). In order to

withstand defendants' motion for summary judgment in a debarment case, plaintiff must demonstrate that there is a genuine issue of material fact as to whether the debarring official's decision to suspend him was arbitrary or capricious, an abuse of discretion or not otherwise in accordance with law. *Koehler v. United States*, No. 90-2384, 1991 WL 277523, at * 1 (D.D.C. Dec. 9, 1991).

## III. ANALYSIS

While plaintiff makes a variety of arguments in opposition to defendants' motion for summary judgment, they all essentially boil down to one central theme: that he was deprived of due process of law by virtue of the debarring official's determination under 48 C.F.R. § 9.406-3 that there were no genuine issues of material fact and therefore no need to give plaintiff the opportunity to appear at a second trial-type hearing under the Federal Acquisition Regulations and the Army's procedures for debarment proceedings. While plaintiff did have a hearing before the debarring official at which he testified, plaintiff maintains that he was entitled to a second hearing at which he could present witnesses and confront witnesses against him. The question is whether it was arbitrary and capricious to deny plaintiff that second hearing on the ground that he had failed to raise a genuine dispute of material fact in his pre-hearing submission, at the first hearing and in his post-hearing submission.

■ Under the Federal Acquisition Regulations (the "FARs"), a government contractor may be debarred for any one of a number of reasons, including for the conviction of or civil judgment for fraud, violation of the antitrust laws, embezzlement, theft, forgery, bribery, making false statements or the commission of any other offense demonstrating a lack of business integrity or business honesty that affects the present responsibility of the government contractor. 48 C.F.R. § 9-406-2(a). The FARs expressly provide that in the case of a conviction or civil judgment debarment is effectively automatic; because

another fact-finder (a judge or a jury) has already found one of the bases for debarment beyond a reasonable doubt or by a preponderance of the evidence, there is no statutory, regulatory or due process requirement of an additional hearing to establish the underlying facts. *See* 48 C.F.R. §§ 9.406-2(a), 9.406-3(d); *cf. Old Dominion Dairy Products, Inc. v. Secretary of Defense*, 631 F.2d at 967-69; *Pollution Control Industries of America, Inc. v. Reilly*, 715 F.Supp. 219, 221 (N.D.Ill.1989).[1]

■ The FARs further provide that absent a conviction or civil judgment a contractor may also be debarred, based upon a preponderance of the evidence, for "any other cause of so serious or compelling a nature that it affects the present responsibility of a Government contractor or subcontractor." 48 C.F.R. § 9.406-2(c). In such cases, the debarring official provides a notice of proposal to debar and invites the contractor to submit, in person or in writing or both, information or argument in opposition to the proposed debarment, "including any additional specific information that raises a genuine dispute over the material facts." 48 C.F.R. § 9.406-3(c)(4). If the debarring official concludes that there are no "genuine disputes over material facts," he may make a decision to debar based on all the information in the record, including any submission made by the contractor. 48 C.F.R. § 9.406-3(d). Here, plaintiff was given adequate notice and an opportunity to appear in person and with counsel, as well as to provide a written memorandum and other material in opposition to the proposed debarment.

■ "[I]f it is found that the contractor's submission in opposition raises a genuine dispute of fact material to the proposed debarment," the FARs next require the agency to afford the contractor a further opportunity to appear with counsel, to submit documentary evidence, to present witnesses and to confront any witnesses presented by the agency. 48 C.F.R. § 9.406-3(b)(2). In this case, plaintiff was not given that opportunity be-

---

1. Plaintiff is not challenging the regulatory scheme itself as a violation of due process but the

way in which it was applied in this case.

cause the debarring official concluded, on the basis of the October written submissions, the November 1, 1993, hearing, plaintiff's December 6, 1993, submission and all other material in the record, that there was no genuine dispute as to any material fact. It is this conclusion that plaintiff says was arbitrary and capricious. He requests the Court to deny the government's motion for summary judgment and to direct the Army to conduct the adversarial proceeding called for by the FARs.

In considering plaintiff's arguments, it is not the Court's function to determine whether in fact there was a genuine issue of material fact or whether the Court would find a genuine dispute of material fact if it were considering a motion for summary judgment *de novo* in a normal civil case. Rather, the Court must consider only whether there is a genuine issue of material fact as to whether the Army's decision not to grant plaintiff a hearing under 48 C.F.R. § 9.406–3(b)(2) was arbitrary or capricious, an abuse of discretion or otherwise not in accordance with the law. *See Koehler v. United States,* 1991 WL 277523, at * 5. The Court has carefully reviewed plaintiff's affidavit, dated October 19, 1993, and the entire transcript of the debarment hearing held by the debarring official on November 1, 1993, as well as all other documents in the administrative record in this case. The Court agrees with the debarring official that the essential facts are undisputed and, more importantly, it concludes that it was not an abuse of discretion for the debarring official to so conclude.

Plaintiff admits that he received goods and services from Mr. Yassa and never paid him for them in cash or currency. A.R.Tab D, at 10–11. He admits that he gave Mr. Yassa's church an automobile and that he took a tax deduction, claiming it as a charitable contribution, but says that he intended this as payment to Mr. Yassa for the services and goods Mr. Yassa provided. A.R.Tab D, at 26–27, 30–31, 33–35. Plaintiff claims that he did this because Mr. Yassa refused any other form of payment to him. A.R.Tab D, at 11. The only evidence that the goods and services were not a gratuity was Mr. Waterhouse's own statement that the car he donat-

ed to the church for which he took a tax deduction "served both to compensate Mr. Yassa for the value of the work as well as being a contribution to the church" and that he took a tax deduction only for the difference between the value of the services and the value of the car. A.R.Tab D, at 33–35. On this basis, plaintiff claims that he did not have the intent necessary to accept an illegal gratuity and that his assertion that he lacked the requisite intent raises a genuine issue of material fact. While Mr. Waterhouse stated on numerous occasions during the hearing that he did not knowingly accept a gratuity, that he intended to pay Mr. Yassa for the goods and services, that he wanted Mr. Yassa to bill him for the services, which Mr. Yassa refused to do, and that he had no intention of accepting a gratuity from Mr. Yassa, he also acknowledged that Mr. Yassa accepted the car on behalf of the church and that Mr. Waterhouse knew that it was going to the church and not to Mr. Yassa. A.R.Tab D, at 30–31.

On the basis of the record before him, the debarring official concluded that Mr. Waterhouse accepted gratuities from Mr. Yassa, that Mr. Waterhouse did not donate the automobile to Mr. Yassa, that Mr. Waterhouse donated an automobile to Mr. Yassa's church and took a charitable contribution for his donation, that the church (not Mr. Yassa) provided the receipt for the donation of the automobile, that the donation could not be both compensation for the goods and services received from Mr. Yassa and a charitable contribution in the amount of $3,684.00, that the charitable contribution of the automobile to the church was not compensation for the goods and services Mr. Yassa provided to Mr. Waterhouse, that the goods and services provided by Mr. Yassa were gratuities for which Mr. Waterhouse did not compensate Mr. Yassa, and that it was improper for Mr. Waterhouse to accept the gratuities because they were given during a period of time when Mr. Waterhouse approved purchase orders issued to and work performed by Mr. Yassa's company. A.R.Decision, Tab C, at 4–6. On the evidence before him, the debarring official found that there were no issues of material fact in dispute and, specifically, that plaintiff's assertion that he did not have the

requisite intent did not raise a genuine issue of material fact. A.R.Decision, Tab C, at 4–5.

Upon a thorough review of the record, including Mr. Waterhouse's affidavit and testimony, the Court cannot conclude that General Cuthbert's decision was arbitrary and capricious, an abuse of discretion or otherwise not in accordance with the law. *See Robinson v. Cheney,* 876 F.2d 152, 161–63 (D.C.Cir.1989); *Koehler v. United States,* 1991 WL 277523, at *2, 5. Nor can the Court conclude that the debarring official failed to consider mitigating factors or that his action was "punitive" in violation of plaintiff's substantive due process rights. On this record, it was not arbitrary and capricious to conclude that plaintiff is not a "presently responsible contractor."

In view of the foregoing, the Court GRANTS defendants' motion for summary judgment and enters judgment on all counts in favor of the defendants.

SO ORDERED.